1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ALLEN HAMMLER, | Case No. 1:19-cv-00653-EPG |
|---|---|
| Plaintiff, | ORDER DISCHARGING ORDER TO SHOW CAUSE |
| v. | (ECF No. 11) |
| GOOCH, et al., | |
| Defendants. | FINDINGS AND RECOMMENDATIONS, RECOMENNDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANTS DOE AND SALCEDO, FOR DELIBERATE INDIFFERENCE TO SERIOUS RISK OF HARM AND SALCEDO, BURNES, GOOCH AND MIDDLETON FOR MEDICAL INDIFFERENCE, ALL IN VIOLATION OF THE EIGHTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED |
| | (ECF Nos. 14) |
| | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |
| | ORDER DIRECTING CLERK OF THE COURT TO ASSIGN A DISTRICT JUDGE |

Allen Hammler ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint

1

commencing this action on May 14, 2019 (ECF No. 1.) On October 17, 2019, the Court issued a Screening Order and granted Plaintiff leave to amend. (ECF No. 9.) On November 7, 2019, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 10.) On April 21, 2020, the Court ordered Plaintiff to show cause ("OSC") why his complaint should not be dismissed as a sanction for filing false statements in his FAC. (ECF No. 11.) On May 5, 2020, Plaintiff responded to the order to show cause. (ECF No. 12.) On May 7, 2020, the Court permitted Plaintiff to file a Second Amended Complaint or to stand on his complaint but reserved its findings on the OSC. (ECF No. 13.) On May 19, 2020, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 14.)

The Court has reviewed the SAC, discharges the OSC for the reasons below, and finds that the following claims may proceed past the screening stage: (1) Plaintiff's Eighth Amendment claims for deliberate indifference to a serious risk of harm against Defendants John Doe and Salcedo, and (2) Plaintiff's Eighth Amendment claims for medical indifference against Defendants Salcedo, Burnes, and Gooch.  The Court recommends that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

**I.     ORDER TO SHOW CAUSE**

On April 21, 2020, the Court ordered Plaintiff to show cause why sanctions should not issue for false statements in his complaint, relating to the number of previous cases he has filed. (ECF No. 11).  Plaintiff responded to the order to show cause on May 5, 2020.  (ECF No. 12).  In its May 7, 2020 order, the Court ordered that if Plaintiff chose to file a second amended complaint, he list all lawsuits to which he has been a party while a prisoner and to use the form the Court provided to him. (ECF No. 13.)

In Plaintiff's Second Amended Complaint, Plaintiff has included an updated list of lawsuits to which he has been a party while a prisoner. (ECF No. 14).  The Court has not independently verified the accuracy of the list.  However, in light of Plaintiff's response, the Court discharges the OSC without prejudice.

This discharge does not bar Defendants from seeking sanctions against Plaintiff for any falsehood in the SAC or for any other reason.

## II.     SCREENING REQUIRMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 8.), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

\\\

3

### III.     SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is a prisoner at California State Penitentiary Corcoran ("CSPC"). In its first screening order, the Court provided a summary of Plaintiff's complaint in great detail. (ECF No. 9.) His FAC, in large part, appears to be an exact copy of Plaintiff's original complaint. In fact, based on the Court's review, Plaintiff made some non-substantive changes,[1] added three substantive paragraphs and attached a document.

On October 29, 2018, a "Prisoner/Patient" set fire to his cell. "The fire blazing bright could be seen by the Plaintiff in the reflection of the tower's big glass window, smoke pouring, black and white plumes, thick and continual."

Plaintiff watched "as the tower guard (John Doe)[2] walked window to window nudging each to make sure that they were closed tightly to seal out the smoke that he himself not be overcome by it or rendered amendable to the toxins it carried with it as it filled the section of which all door(s) had been closed, the tower guard leaving them that way in operation converting the small section into a makeshift gas-chamber or the like."

"Screams for 'help' and shouts of those left inside to be overtaken could also be heard. Some in anger, 'Hey, you mother fuckers better come and get us out of this smoke,' 'I've got asthma, I need my inhaler,' in between loud coughs and choking.' 'I can't breath,' etc. went on for more than an hour." During this time, Defendant John Doe did nothing. He made no attempt to "open the Rotunda's electrically operated door to filter the smoke out, even though the controls were at his finger tips and easily accessible."

The smoke became thick. Plaintiff could no longer see through it. The fire began "at or about 10:00 a.m. It was not until 10:40 a.m. that Defendant John Doe…attempted to clear the smoke from the chamber," by turning on the two large fans that hung from each side of the chamber. Even then, Defendant John Doe only turned on the fans so that Defendant Gooch and

---

[1] Plaintiff inserted several sentences at the end of paragraphs 6, 7, 9, 10, 11, 13, and 16. Most were conclusory allegations, such as "Immediate Response was mandated" to his chest pains. He also directed the Court's attention to Attachment A to his FAC, which the Court discusses later. He also filled in the name of c/o Bartolo where he previously had a blank. And for paragraph 21, he changed "Evil and Deplorable intent" to "Evil intent."

[2] Plaintiff refers to several Defendants as John Doe, without attributing a number to any of them. The Court refers to the tower guard as John Doe. The Chief of Mental Health of CSPC and the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") are referred to by their titles.

4

"another C/O" could enter.

"The smoke still hanging thick, Defendant Gooch, the other C/O, and the Prisoner/Patient entered and began walking up the stairs. As they did, Defendants Salcedo and Middleton entered the chamber and went to the red storage locker where the fire hose is kept." Defendant Salcedo pulled out the fire hose and slowly walked up the stairs "in no way appearing to be responding to a fire but with all the posture of the indifferent defendant he is."

At that time, Plaintiff felt a "round of sharp pains in his chest." Plaintiff yelled down to Defendant Salcedo that he was having chest pains. "Salcedo looked up at him and said 'you're all having chest pains.'" Plaintiff yelled to Defendant Salcedo that he had a heart condition on record; Salcedo responded "we'll be up there" and continued drawing up the hose "as though it were more of an emergency than Plaintiff being at risk of heart failure."

Plaintiff, "obviously in distress," then yelled to Defendant Middleton that he was having chest pains; she "responded 'yeah, you already told him,' continuing to reel in the hose."

At that time, Defendant Gooch was walking by to leave. Plaintiff stopped him and told him that he had a heart condition on record and told him that he was actively having "sharp chest pains." He then asked Defendant Gooch to "cuff him and take him out for vitals, etc." Defendant Gooch replied "that aint my job; I'm just over here escortin medical. You gotta get with one'a your building officers… What I will do is let one'a them know on my way out." Gooch then told Plaintiff that he had to go, "leaving Plaintiff and others to suffer the fumes." This was at or around 10:45 a.m. Plaintiff alleges that Gooch never told anyone.

At 11:06 a.m., Defendant Burnes entered the chamber and went to cell #20. "There, he spoke to the fire-starter and then made his way down the tier-walkway. Plaintiff listened as Defendant Burnes went cell to cell asking each Prisoner/Patient if they were okay. When he got to his cell Plaintiff informed him that he was having chest pains and had been telling [the] officer such for the last 20 minutes at least." "O.K.", Defendant Burnes told Plaintiff, "as though he cared not and continued to go cell to cell, never once acting to tell either of the C/O's now standing at the entrance in earshot to come remove Plaintiff from his cell to be checked out." Plaintiff alleges this inaction was in retaliation for Plaintiff "actively pursuing complaints against

[Burnes] in regard to his and his supervisee(s) treatment of the mentally ill in the building, which is in essence a mental ward, under federal charter and state regulations."[3]

At 11:40 a.m., Defendant Wilson, an R.N.,[4] entered the chamber to give a prisoner/patient his medication and inhaler. Plaintiff yelled to her that he was having chest pains. "She, being on the first/lower level walked to the floor just below Plaintiff's cell and asked 'is it the smoke?'" Plaintiff replied, "How the hell do I know; just have them come and get me so you can check me out." Defendant R.N. Wilson then started asking "random questions" to the point that "Plaintiff cut her off and told her that if she did not get him help he'd sue her." Defendant R.N. Wilson then left and ten minutes later Defendant Middleton and C/O Bartolo asked if Plaintiff wanted to go "get checked out." Plaintiff further alleges that "Immediate response was mandated, no Questions to be asked, Wilson intentionally delayed Response."

Plaintiff was subsequently taken to "CTC/medical" for an EKG. The R.N. questioned Plaintiff about what was going on at the time Plaintiff began to experience pain. "Plaintiff spoke of how he and others had been left inside of the Chamber with smoke and the doors closed." Upon hearing this, Defendant Middleton interjected, "no, the doors were open," attempting to keep the R.N. from recording the statement in records. Plaintiff and Defendant Middleton engaged in an argument, necessitating the postponement of the EKG until "Plaintiff's vitals could be read as normal."

"Plaintiff alleges that the type of acts and behavior exhibited by the Tower Guard (John Doe) and each Defendant named herein are a pattern of conduct at CSPC/CCCMS/SHU that has been longstanding and well-documented via the high volume of CDCR 602 appeals in accord and petitions, and civil actions filed upon identical facts to support a reasonable inference that employees(s) need further training and policies mandate a review."

---

[3] At this point, Plaintiff points to Attachment A. The first part of the attachment is an order from *In re Hammler*, No. 18W0162A (Cal. Sup. Ct. Kings County, Nov. 8, 2018). The court noted that Plaintiff alleged the guards improperly closed doors on two occasions, preventing them from hearing the inmates. The court ordered the CDCR to respond. The second part is the response from California Correctional Health Care Services, which advises the court it is the wrong entity to respond. The Court takes further judicial notice of the docket from *In re Hammler* and notes that the petition for a writ of habeas corpus was denied on February 1, 2019 for reasons that are not clear from the available docket.

[4] Presumably, R.N. is shorthand for registered nurse.

Plaintiff alleges that the following supervisory officials are liable for the pattern described above: (1) the Chief of Mental Health at CSPC; (2) Defendant Clark—the Warden of CSPC; (3) Defendant Llamas, "employed as a C/O Cpt. Of the CCCMS/SHU in CSPC;" and (4) the Secretary of California Department of Corrections and Rehabilitation. Plaintiff contends that these Defendants are broadly liable for "(1) failing to provide necessary and appropriate security measures to protect Plaintiff from the harm and injuries herein alleged to have been suffered; (2) failing to train their employee(s) and agent(s); (3) failing to provide the necessary and appropriate personnel necessary for Plaintiff's safety and keep; and (4) retaining and failing to discipline agents for the line of conduct when they have continually conducted themselves in the fashion presently and past, near present, specifically Defendant Burnes, who Plaintiff alleges is being kept posted in SHU/ASU for his being unable to be posted anywhere else due to past bad conduct, and so to the cost of Plaintiff and other(s) in the CCCMS/SHV. He is kept there and left to torture the mentally ill."

Additionally, Plaintiff alleges that the Secretary of the CDCR has a duty to make final decisions of CDCR policies per 15 CCR § 3380. Thus, the Secretary "had constructive or actual Knowledge of Deficient Policies, Practices and unconstitutional Doctrines of ignoring calls for help, 'man-down,' reports of being suicidal, Homicidal, reports of Chest Pains, and in cell Fights and assaults, stabbings etc. as alleged above." And despite this knowledge, the CDCR's secretary and the other supervisors he named condoned and ratified the policies.

In further support of his supervisory liability claim, Plaintiff also points to another incident involving "the dramatic—end of a prisoner/patient's life on the date of 3/9/19 ("the March 9, 2019 incident") on which date said Prisoner was killed by his cellmate and in being viciously stabbed had kicked his cell door for help only to receive none, as the tower guard having closed the door(s) and windows failed to hear…however, in later becoming aware that the murder had occurred or at least that one of the two inside the cell had been greatly injured…[h]e (tower guard) and the floor C/O on the late shift (1st/watch) did not report it but simply left when shift was over, leaving the dead to be found by the morning crew.

Plaintiff further alleges that "now, to date, this is still the manner in which tower guards

7

conduct themselves in the unit, intentionally walking to a window to make sure its tightly shut the shouts and screams of prisoner(s)/patient(s) yelling 'man down' appearing to evoke annoyance and anger rather than the sense of duty to investigate to see if one is injured, as 'man down' means this is the case."

As a "direct and proximate result of each of the Defendants" Plaintiff names in his suit, Plaintiff alleges that he suffered "(1) physical injury of smoke inhalation that rendered him hoarse and inflicted with labored breathing for two days subsequent for lung infection," (2) complications of a pre-existing heart condition, and (3) substantive violations of his Eighth Amendment rights.

At the very end of the Complaint, Plaintiff alleges that (1) Defendants Wilson, Gooch, Middleton, Salcedo, Burnes and Doe were mandated to act at once because they were told Plaintiff had chest pains. He also alleges that Gooch and Middleton did not act on their own to secure Plaintiff in handcuffs, "and Remove Plaintiff to escort him to be seen to, but left it to another in Middleton's case, and completely abandoned Plaintiff in Gooch's case[.]"

## IV.   ANALYSIS OF PLAINTIFF'S CLAIMS

### A.   Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Eighth Amendment: Deliberate Indifference to Serious Risk of Harm to Plaintiff**

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment through their deliberate indifference to a serious risk of harm to Plaintiff.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th

Cir. 2013) (citing *Farmer*, 511 U.S. at 832–33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, 714 F.3d at 1160. This involves both objective and subjective components. The objective component requires that the alleged deprivation be "sufficiently serious"; where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). The subjective component requires that the prison official actually "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must ''be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." *Farmer*, 511 U.S. at 843. "[D]eliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id.* at 835. This "deliberate indifference" standard is equivalent to ''recklessness,'' in which ''a person disregards a risk of harm of which he is aware.'' *Id.* at 836–37.

Exposure to hazardous environmental conditions in a prison, including toxic substances and dangerous work environments, can form the basis of an Eighth Amendment conditions of confinement claim. *See Helling v. McKinney*, 509 U.S. 25, 28-29 (1993) (upholding Eighth Amendment claim based upon exposure to tobacco smoke); *Morgan v. Morgensen*, 465 F.3d 1041, 1047 (9th Cir. 2006) (holding that it was clearly established law that a "safety hazard in an occupational area" violated prisoner's Eighth Amendment rights); *Keenan v. Hall*, 83 F.3d 1083, 1089-90 (9th Cir. 1996) (concluding that deprivation of outdoor exercise, excessive noise and lighting, lack of ventilation, inadequate access to basic hygiene supplies, and inadequate food and

water were sufficient to state an Eighth Amendment claim); *Wallis v. Baldwin*, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (noting asbestos exposure could serve as the basis for an Eighth Amendment claim); *Kelley v. Borg*, 60 F.3d 664, 666-67 (9th Cir. 1995) (holding that the law was sufficiently clearly established to allow an Eighth Amendment claim for failing to remove inmate from cell where he was exposed to unidentified "fumes" which rendered him unconscious to proceed).

### *(i)     John Doe*

Here, the Court finds that Plaintiff has stated a claim against Defendant John Doe for acting with deliberate indifference to a serious threat of harm confronting Plaintiff. As to the objective element of the inquiry, construing the facts liberally in favor of Plaintiff, the Court finds for purposes of proceeding past screening that Plaintiff sufficiently alleges exposure to a sufficiently serious risk of harm to state a claim under the Eighth Amendment. Plaintiff alleges that the smoke was thick, continual, unabated for a prolonged period of time, and caused breathing issues for himself, as well as other inmates.

Further, Plaintiff has alleged facts from which one could infer that Defendant John Doe was deliberately indifferent to this risk: Defendant John Doe was aware of the danger the smoke presented, as demonstrated by his securing the windows in the tower to ensure no smoke entered. Yet, according to the allegations in the complaint, he failed to do anything to negate the danger despite his ability to do so.

### *(ii)     Defendant Salcedo*

Plaintiff has likewise stated an Eighth Amendment deliberate indifference claim against Defendant Salcedo that may proceed past the screening stage. Plaintiff has alleged that the thick smoke posed an obvious risk of harm to Plaintiff, and Plaintiff alleges that Salcedo acted indifferently to that risk by failing to act to minimize the smoke.

### **C. Eighth Amendment: Deliberate Indifference to Serious Medical Needs**

Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs.

11

To state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, Plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotation marks omitted), *overruled on other grounds* by *WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989).

Here, Plaintiff has alleged that he suffered chest pains and had a heart condition. Thus, Plaintiff has alleged facts indicating that he suffered from an objectively serious medical condition. *See Dorrough v. Chinnapa*, 1:15-cv-01488, 2016 WL 2898493 at *4 (E.D. Cal. May 17, 2016) (finding complaints of chests pain and other symptoms indicating a heart attack to be an objectively serious medical condition). The Court now turns to whether Plaintiff sufficiently alleges Defendants were deliberately indifferent to his serious medical condition.

### (i) Defendant Salcedo

Plaintiff alleges that he told Defendant Salcedo that he was having chest pains and that he had a heart condition on record. Defendant Salcedo, however, did nothing in response to Plaintiff's complaints, instead stating "we'll be up there" as he continued to "draw up the hose." Plaintiff has alleged that Salcedo knew of a serious medical issue but failed to respond; Plaintiff

12

also alleges that he suffered "complications of the heart" because of that failure to respond. These allegations are sufficient to state a medical indifference claim against Defendant Salcedo to proceed past the screening stage.

### (ii) Defendant Middleton

Plaintiff alleges that, after he complained to Defendant Salcedo of his chest pains and heart condition, he reiterated his complaints of chest pain to Defendant Middleton, who responded "yeah, you already told him [Defendant Salcedo]." He then alleges that Defendant Middleton was "mandated to act at once, Forthwith, in being told that he was having Chest Pains," and "did not on [his] own act to secure Plaintiff in Handcuff and Remove Plaintiff" for medical care. Rather, he alleges that Defendant Middleton "left it to another[.]"

As alleged, Defendant Middleton did not ignore Plaintiff's complaints, but indicated that another officer had already been told, which does not indicate deliberate indifference. Plaintiff does not allege facts that would demonstrate that Defendant Middleton knew immediate medical attention was required and simply ignored the need for treatment or otherwise acted to inappropriately delay treatment. Plaintiff's allegations that Defendant Middleton was "mandated to act at once, Forthwith," is conclusory and does not adequately establish that Defendant Middleton knew of and purposefully disregarded an excessive risk to Plaintiff's safety.

### (iii) Defendant Gooch

Plaintiff alleges that he then told Defendant Gooch that he had a heart condition on record and was actively having "sharp chest pains." He then asked Defendant Gooch to "cuff him and take him out for vitals etc." But Defendant Gooch initially responded "that aint my job; I'm just over here escortin' medical. You gotta get with one'a your building officers." Defendant Gooch then told Plaintiff that he would "let one'a them known on my way out," before telling Plaintiff had to go. Plaintiff alleges in the FAC that Defendant Gooch did not tell anyone.

The Court concludes that these allegations state a medical indifference claim against Defendant Gooch for screening purposes. Plaintiff alleges that Defendant Gooch was aware of Plaintiff's serious medical condition, said he would inform others, and failed to do so.

\\\

                *(iv)*      **Defendant Burnes**

Plaintiff alleges that he informed Defendant Burnes about his chest pains to which Defendant Burns responded, "O.K." However, Defendant Burnes did nothing in response to Plaintiff's complaints, despite the presence of multiple C/Os who "were in earshot to come remove Plaintiff from his cell to be checked out."

The Court finds that, liberally construed, these allegations are sufficient to state a medical indifference claim against Defendant Burnes. Essentially, Plaintiff alleges that Defendant Burnes knew of a serious medical condition but ignored it.

                *(v)*      **Defendant R.N. Wilson**

Plaintiff alleges that Defendant R.N. Wilson entered the chamber, and Plaintiff yelled to her that he was having chest pains. She initially responded, "is it the smoke?" to which Plaintiff replied, "how the hell do I know, just have them come and get me so they can check me out." Defendant R.N. Wilson then began to ask "random questions" to the point Plaintiff "cut her off and told her that if she did not get him help he'd sue her." She then left and ten minutes later Defendant Middleton and another officer approached and asked if Plaintiff wanted to get "checked out."

These allegations do not state a medical indifference claim. Plaintiff does not allege that R.N. Wilson ignored his medical complaints. To the contrary, Plaintiff alleges that Defendant R.N. Wilson responded to the complaints by asking about the cause. Additionally, ten minutes later, someone addressed those complaints. Additionally, the facts alleged do not establish that Defendant R.N. Wilson knew of a medical issue requiring immediate attention and purposefully ignored the condition or delayed treating it.

**D. First Amendment Retaliation**

Plaintiff alleges that Defendant Burnes refused to provide medical care in retaliation for Plaintiff pursuing "complaints" against him regarding his treatment of mentally ill prisoners. Plaintiff also alleges that Defendants Middleton and Salcedo retaliated against him, but Plaintiff does not describe the allegedly protected activity that caused those Defendants to retaliate against him.

"Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted). The Ninth Circuit in *Watison* recently set forth the elements of a first amendment retaliation claim in the prisoner grievance context:

> A retaliation claim has five elements. *Id.* 'First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff. *Id.* at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). '[T]he mere threat of harm can be an adverse action…' *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory conduct intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidenced of retaliatory intent"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege the 'official's acts would child or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568  (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Broadheim*, 584 F.3d at 1269, that is 'more than minimal,' *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569.
>
> Fifth, the plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution…" *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were 'unnecessary to the maintenance of order in the institution, *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

Here, the Court finds that Plaintiff fails to state a retaliation claim against Defendant Burnes. Plaintiff simply alleges in conclusory fashion that Defendant Burnes ignored his medical complaints in retaliation for Plaintiff's grievances against Defendant Burnes. But Plaintiff fails to allege any facts supporting this conclusion. Conclusory allegations of retaliation are insufficient to state a claim absent facts in support. *See Hentz v. Ceniga*, 402 Fed.Appx. 214, 215 (9th Cir. 2010) (conclusory allegations of retaliation insufficient to state a claim); *Williams v. Botich*, Case

No. CV 05-02877 TJH (AN), 2010 WL 11534578 at *7 (C.D. Cal. Sept. 3, 2010) ("The § 1983 First Amendment retaliation claim fails to set forth any non-conclusory allegation that show any of the named defendants had a retaliatory motive.").

Moreover, Plaintiff relies heavily on a claim that the retaliation was related to his writ of habeas corpus. There are no allegations that Defendant Burnes mentioned Plaintiff's writ petition in connection with this action, nor has Plaintiff otherwise specifically connected the events in a way that would demonstrate retaliation. Hence, Plaintiff does not state a claim against Defendant Burnes for retaliation.

The Court also finds that Plaintiff fails to state a retaliation claim against Defendants Middleton and Salcedo because Plaintiff fails to allege any protected conduct that these Defendants retaliated against. His conclusory allegation "All claims of Retaliation are predicated on the Protected conduct of filing 602(s) and All Defendant(s) were aware" are conclusory and insufficient to state such a claim. *See Williams*, 2010 WL 11534578 at *7.

### E. Supervisory Liability Claims

Plaintiff also sues various supervisory officials including the Chief of Mental Health at CSPC; Defendant Clark, the Warden of CSPC; Defendant Llamas, the correctional officer captain of the CCCMS/SHU in the CSPS; and the Secretary of the CDCR (collectively referred to as "the named supervisors").

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991). "The requisite causal connection can be established…by setting in motion a series of acts by others," *Id.* (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others,

16

which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiesce in the constitutional deprivation; or for conduct that showed reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration and quotation marks omitted).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of a failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Id.*

With respect to failure to train, Plaintiff alleges that the "type of acts and Behavior exhibited by the Tower Guard (John Doe) and each Defendant named herein are a part of a pattern of conduct at CPSC/CCCMS/SHU that has been longstanding and well Documented via" 602 appeals and lawsuits. He also alleges that Defendant Burnes is posted at SHU/ASU because he is unable to be posted anywhere else due to his bad conduct. He further alleges that "Employees need further training and Policies mandate a Review, in Emergency Responses." He alleges that Defendant Sherman, the warden, knew about the pattern or practice due to the 602 appeals and yet failed to instate training in emergency responses.

Plaintiff's allegations fail to state a claim for supervisory liability under these legal standards.  Plaintiff does not allege that any of these supervisory defendants had a direct role in the events at issue.  Plaintiff's allegations that the events arose from a failure to train are conclusory and unsupported by facts.  Plaintiff's examples of other events are not substantially similar to the events at issue in this case, i.e, a failure to timely address a medical situation in the middle of fire emergency.  Moreover, there are no facts that would establish that the delay in providing such attention to Plaintiff was due to a failure to adequately train defendants.

Plaintiff alleges that the CDCR Secretary is liable because the Secretary may make final decisions on CDCR policies per 15 C.C.R. § 3380 and therefore he (along with all the other

named supervisors) "had constructive or actual knowledge" of the conditions. That notion has been rejected. *See Garcia v. Cate*, No. 5:13-cv-1610, 2015 WL 5998607, at *11 (C.D. Cal. June 4, 2015), *report and recommendation adopted*, 2015 WL 5971550 (C.D. Cal. Oct. 13, 2015) (citing cases and holding plaintiff failed state Eighth Amendment claim against CDCR Secretary under § 3380 without allegations that CDCR Secretary had actual knowledge or implemented the offending policies). Plaintiff's conclusory allegation that the CDCR Secretary had "constructive or actual knowledge" does not state a claim.

## V.     CONCLUSION AND ORDER

The Court has screened the First Amended Complaint and recommends finding that the following claims should proceed past the screening stage: (1) Plaintiff's Eighth Amendment claims for deliberate indifference to a serious risk of harm claims against Defendants John Doe and Salcedo, and (2) Plaintiff's Eighth Amendment medical indifference claims against Defendants Salcedo and Burnes. The Court recommends dismissing with prejudice all other asserted claims and defendants.

The Court does not recommend granting further leave to amend because the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the legal standards above, and Plaintiff filed his first amended complaint with the guidance of those legal standards.  It appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims against (a) Defendants John Doe and Salcedo for deliberate indifference to a serious risk of harm in violation of the Eighth Amendment, and (b) Defendants Salcedo, Burnes, Gooch and Middleton for medical indifference in violation of the Eighth Amendment; and
2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations."

Additionally, the Clerk of the Court shall assign a District Judge to this case.

IT IS SO ORDERED.

Dated:   **June 3, 2020**                         /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE